UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

———

No. 1:25-cv-01553

———

**JBF Interlude 2009 Ltd.,**
*Plaintiff,*

v.

**Artisan Technologies LLC,**
*Defendant.*

———

## OPINION AND ORDER

Plaintiff brought this action alleging that defendant infringed U.S. Patent Nos. 9,641,898 ('898 Patent) and 12,450,306 ('306 Patent). Doc. 1 at 1, 9–15. Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 11), arguing that both asserted patents claim ineligible subject matter under 35 U.S.C. § 101 and that the complaint fails to state a plausible claim for direct or indirect infringement. Doc. 12 at 5–6. For the following reasons, the court grants defendant's motion to dismiss.

### I.  U.S. Patent No. 9,641,898

Plaintiff alleges that defendant infringes at least claim 16 of the '898 Patent. Doc. 1 at 9. However, in its response to defendant's motion to dismiss, plaintiff recites claim 1 of the '898 Patent in its "listing of selected claims" to argue that the '898 Patent is directed to patentable subject matter and contains an inventive concept. Doc. 14 at 5, 15–20. The claims share almost identical limitations, differing only in their preamble. *Compare* '898 Patent col. 16 ll. 13–48 ("1. A system comprising: a video player programmed to perform operations comprising . . .) *with id.* col. 17 l. 48–col. 18 l. 23 ("16. A computer-implemented method comprising: . . .).

Considering merely implementing a patented method onto a computer does not satisfy the § 101 eligibility test, the court will focus its analysis on claim 1—the claim plaintiff listed in its opposition to the present motion. *See United Servs. Auto Ass'n v. PNC*

- 1 -

*Bank N.A.*, 139 F.4th 1332, 1337 (Fed. Cir. 2025), *petition for cert. filed*, No. 25-853 ( Jan. 14, 2026) ("We have repeatedly held that mere computer-based implementation, without more, is not sufficient to render claims directed to patent-eligible subject matter at step one." (citing *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 225–26 (2014))); *id.* at 1338 ("Invoking a computer merely as a tool to improve a fundamental practice or abstract process does not make an otherwise abstract claim non-abstract . . . ." (citing *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020)) (cleaned up)).

The '898 Patent is titled "Methods and Systems for In-Video Library." '898 Patent, at [54]. In the background section, the '898 Patent notes that "video providers like YouTube provide access to a substantial body of video clips; however, there is no easy way to search and manipulate these videos to gather them for later viewing, while at the same time viewing an uninterrupted video stream." *Id.* col. 1 ll. 19–24. To remediate this challenge, the '898 Patent discloses "a dynamically updated video library that can be provided in parallel with the presentation of a video stream." *Id.* ll. 24–26.

To "present[] a seamless video stream to a user based on a selection of video segments from the library," the methods and systems of the '898 Patent employ various components. *Id.* ll. 33–35. A video player, according to the present invention, is programmed to present users—any person consuming video content on a computer, laptop, smart phone, etc.—with streams of videos or video segments. *Id.* ll. 36–46. The video stream may include multiple video segments from separate videos. *Id.* col. 11 ll. 24–44. For example, the video stream could include segments from news stories, sports highlights, and/or concerts. *Id.* col. 6 l. 56–col. 7 l. 8. Each of these segments could be played continuously in a "seamless video stream." *Id.* col. 4 l. 58–col. 5 l. 7.

The user can set the sequence of each highlight or news story in the video stream, or the disclosed system may automatically set the sequence. *Id.* col. 4 l. 27–col. 5 l. 33. The '898 Patent describes

this automatically- or user-generated sequence as the video stream's "predefined path[]." *Id.* col. 12 ll. 19–38. Each video segment that is added to the predefined path comes from a video library. *Id.* col. 3 ll. 54–57. The video library "includes a collection of prerecorded audio/video segments that can be immediately played or added to" the sequence. *Id.* col. 5 ll. 34–37. These segments may include "instant replays, news segments, music videos, and commercials" or other similar content. *Id.* ll. 38–39.

The compiled sequence from the library is stored in a "watch-list." *Id.* col. 2 ll. 36–38. Accordingly, "[t]he video player . . . can play each segment in the order it appears in the watch-list . . . and, as one segment completes, the next segment . . . can be played immediately and seamlessly." *Id.* col. 3 ll. 58–61. The moment the stream switches from one video segment to the next is known in the '898 Patent as a "decision point." *Id.* col. 11 l. 45–col. 12 l. 18. The decision point allows the user to continue watching the video stream without pausing. Thus, the next video segment in the watch-list plays after the previous segment concludes—as defined by the system's predefined path. *Id.* col. 12 ll. 19–58.

Turning now to the alleged invention, Claim 1 of the '898 Patent covers:

A system comprising:

a video player programmed to perform operations comprising:

presenting a video stream to a user for viewing by the user, the video stream comprising a predefined path of prerecorded video segments;

during presentation of the video stream:

displaying, to the user viewing the video stream, at least a portion of a library of selectable prerecorded video segments;

receiving, from the user viewing the video stream, a selection relating to one or more of the prerecorded video segments from the library;

- 3 -

> adding, based on the selection, the one or more pre-recorded video segments to a video segment watch-list;
>
> identifying a decision point in the predefined path, the decision point comprising a location at which the video stream can transition to one of a next prerecorded video segment in the predefined path and a segment in the video segment watch-list; and
>
> inserting at least one segment from the watch-list into the video stream at the decision point, wherein the at least one inserted segment comprises the one or more prerecorded video segments that were added to the watch-list based on the selection received from the user viewing the video stream; and
>
> presenting, to the user viewing the video stream, the at least one inserted segment as part of the video stream; and
>
> continuing presentation of the predefined path of prerecorded video segments after the presentation of the at least one inserted segment.

*Id.* col. 16 ll. 13–48.

Going element-by-element, claim 1 discloses a system configured to display multiple video segments consecutively to a user. While viewing the stream, the user may queue other prerecorded videos to be broadcast once the currently streaming video segment concludes. After the queued video segment concludes, then the system consecutively plays the other prerecorded video segments according to the system's predefined path.

## II. U.S. Patent No. 12,450,306

The '306 Patent is titled "Video Player Integration Within Websites." '306 Patent, at [54]. The specification describes the invention as "methods and systems for . . . presenting interactive

videos using an interactive video player integrated within web-sites." *Id.* col. 1 ll. 13–16. It also notes that e-commerce websites often market products with "videos visually presenting the product." *Id.* ll. 22–23. "However, such videos are typically predetermined and unalterable by the" website owner or shopper. *Id.* ll. 24–26. To make videos more customizable, the '306 Patent teaches methods that "allow[] users to select product features of interest to trigger seamless transitions to video content" that depict the product with those features; this allegedly "translates into a higher likelihood of purchase and increased revenue and profits for retailers." Doc. 1 at 2.

Like the '898 Patent, the '306 Patent employs various components to present interactive videos of products to users. The method includes a product webpage with an "application layer" and a "video player layer." '306 Patent col. 1 ll. 30–41, 54–55.

The application layer may be a webpage, a website, a mobile application, or an HTML document. *Id.* col. 13 ll. 6–22. In any embodiment, the application layer "includes text, graphics, and other user interface features associated with the website (or application)." *Id.* ll. 14–15. User interface (UI) elements allow the shopper "to interact with the webpage" and customize the product. *Id.* ll. 23–46. The UI elements may be text-entry boxes, drop-down menus, or buttons that allow the shopper to configure different features of the product, such as color or size. *Id.* ll. 29–37.

The video player layer is "integrated in the application layer and configured to present the interactive [product] video to the" shopper. *Id.* col. 2 ll. 17–18. The video player layer broadcasts a video that corresponds to the shopper's UI activity. *Id.* col. 13 l. 47–col. 14 l. 24. For example, if the shopper selects a shirt size of 20 and a shirt color of white, the video player layer will display a video of a size 20 white shirt. *See id.*

In summary, the shopper customizes the product via the UI elements, then the application layer communicates the shopper's selections to the video player layer, which displays a product video consistent with the shopper-selected features. The application

layer communicates the shopper's selected product features through "messages." *Id.* col. 14 ll. 58–65. The messages are transferred between the application layer and video player layer "via a two-way communication protocol. For examples, [the] layers . . . may communicate using an application program interface (API)." *Id.* ll. 54–57. The video player layer updates the product video according to the message received from the application layer. Thus, the features in the video would change as the shopper selects different UI elements.

Turning to the alleged invention, Claim 1 of the '306 Patent covers:

A method for presenting an interactive video to a user, the method comprising:

providing a product webpage associated with a product;

displaying, via the product webpage, an application layer including a plurality of user interface (UI) elements, wherein each UI element corresponds to a different configurable feature of the product;

displaying, via the product webpage, a video player layer integrated in the application layer and configured to present the interactive video to the user, the interactive video representing the product;

receiving, via a first UI element of the plurality of UI elements, a first user interaction indicating a selection of a first feature option from a plurality of first feature options for a first configurable feature of the product;

sending at least one first message from the application layer to the video player layer in response to the first user interaction;

presenting, via the video player layer, first video content of the interactive video based on the at least one first message, wherein the first video content

includes a user-specific product configuration having the first feature configured with the first feature option;

during presentation of the first video content, receiving, via a second UI element of the plurality of UI elements, a second user interaction indicating a selection of a second feature option from a plurality of second feature options for a second configurable feature of the product;

sending at least one second message from the application layer to the video player layer in response to the second user interaction; and

transitioning from the first video content to second video content of the interactive video based on the at least one second message, wherein the second video content includes a user-specific product configuration having the first feature configured with the first feature option and the second feature configured with the second feature option.

'306 Patent col. 18 l. 53–col. 19 l. 25.

Going element-by-element, claim 1 discloses a method for marketing a product via interactive video. The shopper can customize different product elements, such as size and color, on the product's webpage and an interactive video marketing the product will reflect those selections. For example, the product's webpage may display a video of a red sedan driving along the highway; however, according to the method of claim 1, the shopper may select "black" on one UI element, and the video would update to show a black sedan driving along the highway. The user could then select "SUV" on a second UI element, which would cause the video to then depict a black SUV driving along the highway. In short, claim 1 covers a method that allows a shopper to customize and manipulate different features of a product displayed in an interactive video.

### III. Legal standards

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Federal Circuit reviews procedural issues, including Rule 12(b)(6) motions, according to regional circuit law. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018). In the Third Circuit, courts conduct a two-part analysis for Rule 12(b)(6) motions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, "accept[ing] all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Id.* at 210–11. Second, the court determines whether the alleged facts sufficiently show a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Assessing plausibility, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Federal Circuit has "repeatedly recognized [that] it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289–90 (Fed. Cir. 2024) (cleaned up). Section 101 eligibility is properly decided on a Rule 12(b)(6) motion "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024)

(quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Patent-eligible subject matter is defined as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has excepted "[l]aws of nature, natural phenomena, and abstract ideas" from patentability under § 101. *Alice*, 573 U.S. at 216 (cleaned up).

> Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Id.* at 217 (cleaned up).

*Alice* established a two-step framework for determining patent-eligibility under § 101. At step one, the court determines whether a claim is "directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If so, the court determines at step two whether the claim "contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 221 (cleaned up). "[I]f a patent's recitation of a computer amounts to a mere instruction to 'implement' an abstract idea 'on a computer,' that addition cannot impart patent eligibility." *Id.* at 223 (cleaned up).

To determine whether claims are "directed to patent-ineligible subject matter," such as an abstract idea, the court should "look to the character of the claims as a whole," including the patent's specification. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113

F.4th 1359, 1367 (Fed. Cir. 2024) (citing *Enfish v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). Under *Alice* step one, the inquiry "often turns to the question of what the patent asserts as the claimed advance over the prior art." *Id.* In other words, "whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing *Enfish*, 822 F.3d at 1336).

At *Alice* step two, the court considers whether the claims contain an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). For example, in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, "methods for determining metabolite levels were already 'well known in the art,' and the process at issue amounted to 'nothing significantly more than an instruction to doctors to apply the applicable laws when treating their patients.'" *Id.* at 221–22 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). So too in *Alice*, where "the claims at issue amount[ed] to nothing significantly more than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id.* at 225–26 (quotation marks and citation omitted).

## IV. Analysis

As a matter of law, the '898 and '306 Patents are directed to patent-ineligible abstract ideas, and the claims do not otherwise provide an inventive concept.

### A. The '898 Patent claims an abstract idea.

Defendant argues that the "claims of the '898 Patent are ineligible for patenting because they are directed to the abstract idea

of collecting, organizing, and automatically displaying content (e.g., a playlist of videos), implemented with conventional technology." Doc. 12 at 5. The court agrees.

The '898 Patent addresses the problem of users having "access to a substantial body of video clips" but "hav[ing] no easy way to search and manipulate these videos to gather them for later viewing, while at the same time viewing an uninterrupted stream." '898 Patent col. 1 ll. 20–24. As discussed previously, this patent solves that problem through a system comprising a video player that broadcasts a playlist of video segments to a user, wherein the user can add other video segments from a library to the video player's "watch-list," and the system will automatically play the added video and the remainder of the playlist thereafter. *See id.* col. 16 ll. 13–48.

However, the claims and the specification provide no technological improvement to video-streaming equipment. To be sure, the specification makes clear that the video can be broadcast on "any device[] having a suitable visual display," "can be implemented in any appropriate hardware or software," "can be . . . implemented in any suitable programming language or framework." *Id.* col. 13 ll. 43–44, 55–56; col. 14 ll. 24–26. Further, "[t]he type of network is not a limitation . . . and any suitable network can be used." *Id.* col. 15 ll. 32–34. Thus, the claim elements provide nothing further than the desired "result or effect" through "generic processes and machinery." *McRo*, 837 F.3d at 1314.

Plaintiff argues that the '898 Patent claims "a specific data structure to be used in a computer application to address computing-specific problems," and, thus, is directed to non-abstract, patentable subject matter. Doc. 14 at 17–18. According to plaintiff, the "predefined content path data structure . . . allows the video player to provide the viewer 'a complete, start-to-finish, seamless presentation' with smooth transitions and without buffering delays, as well as provide interactive videos that have imperceptible transitions between segments." *Id.* at 17–18 (quoting '898 Patent col. 12 ll. 25–58) (cleaned up). In plaintiff's view, "[t]he '898

Patent does not merely claim the result of seamless video, it 'claims a particular improvement in how this is done,' namely by using the predefined content path." *Id.* (citing *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 897 (Fed. Cir. 2019) (unpublished)).

However, the '898 Patent describes "seamless" in purely result-oriented terms without any technological bearings or improvements. After incorporating by reference two other publications titled "System and Method for Seamless Multimedia Assembly" and "Methods and Systems for Unfolding Video Preroll," the '898 Patent discloses a video playback with "continuous, seamless presentation such that there are no noticeable gaps, jumps, freezes, or other visual or audible interruptions to video or audio playback between segments." *Id.* col. 11 ll. 35–38. The specification adds that:

> 'seamless' can refer to a continuous playback of content that gives the user the appearance of watching a single, linear multimedia presentation, as well as a continuous playback of multiple content segments that have smooth audio and/or video transitions (e.g., fadeout/fade-in, linking segments) between two or more of the segments.

*Id.* ll. 39–44.

Thus, the disclosed method merely describes the idea of consecutively broadcasting a playlist of videos which may include transitions between the videos. "Our precedent establishes that these types of methods of organizing digital media—which is what creating playlists based on user feedback is—are abstract ideas." *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 2022-2215, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024). Merely adding transitions to a video playlist does not claim a technological improvement in computer functionality. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract.").

Considering the predefined content path is described only in result-oriented terms, it lacks the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Thus, the court concludes "that any purported improvements from the claimed invention are simply improvements to the abstract idea, not specific improvements to the underlying technology." *In re Healy*, No. 2024-2311, 2025 WL 2248967, at *4 (Fed. Cir. Aug. 7, 2025) (per curiam) (unpublished).

Next, plaintiff argues that "the claims of the '898 Patent recite implementation details that are 'additional features that ensure the claims are more than a drafting effort designed to monopolize an abstract idea.'" Doc. 14 at 18 (quoting *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1259 (Fed. Cir. 2014)) (cleaned up). Plaintiff notes that the video players must include a library of video segments, the user must select a video segment, and the system must add the selected segment to the "watch-list"; thus, in plaintiff's view, the '898 Patent "does not claim all video players that achieve a result, but only one that meets these specific steps." *Id.* at 19.

These components, and the claims at issue, are like those in *Robocast, Inc. v. Netflix, Inc.*, which claimed "a playlist of content to be displayed . . . and automatically playing that playlist for a user, while giving the user the opportunity to adjust how long each piece of content . . . is displayed for." 767 F. Supp. 3d 138, 141 (D. Del. 2025). Despite the video-player components plaintiff highlights, the '898 Patent suffers from the same fatal flaw as the patents in *Robocast*: "[n]one of the asserted claims contain any specificity as to how to accomplish the tasks of" creating or organizing a library, selecting a video segment, or adding the selected segment to a watch list except through purely results-focused language. *Id.* at 141–42. "Federal Circuit case law is clear that these types of methods of organizing digital media are abstract ideas." *Id.* (cleaned up) (collecting cases); *see also Enfish*, 822 F.3d at 1334

- 13 -

("[B]oth [the Federal Circuit] and the Supreme Court have found it sufficient to compare the claims at issue to those claims already found to be directed to an abstract idea in previous cases.").

Accordingly, the court finds that the claims of the '898 Patent are directed to the patent-ineligible abstract idea of collecting, organizing, and automatically displaying a playlist of video segments.

### B. The '898 Patent fails to provide an inventive concept.

Defendant argues that the claims of the '898 Patent lack any inventive concept. Doc. 12 at 5. The court agrees.

As discussed at step one, the '898 Patent repeatedly notes that the claimed system can be practiced through any device with a screen, with "any appropriate hardware or software," "in any suitable programmable language," and on "any suitable network." '898 Patent col. 13 ll. 43–44, 55–56; col. 14 ll. 24–26; col. 15 ll. 32–34. Thus, the court finds that the '898 Patent claims "nothing significantly more than an instruction to apply the abstract idea of" collecting, organizing, and automatically displaying a playlist of video segments "using some unspecified, generic computer." *See Alice*, 573 U.S. at 225–26.

Plaintiff's argument mainly relies on *Aatrix*. There, the Federal Circuit explained that "[i]f the [claim] elements involve 'well-understood, routine, [and] conventional activity previously engaged in by researchers in the field,' they do not constitute an 'inventive concept.'" *Aatrix*, 882 F.3d at 1128. "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Id.* If the complaint contains "concrete allegations" that "individual elements and the claimed combination are not well-understood, routine, or conventional activity" or that the claimed combination improves the functioning of the computer, the asserted patent survives step two of *Alice*. *See id.*

In its complaint, plaintiff alleged that "[t]he claimed invention also improves the functioning of the video player itself by enabling real-time modification of a video-stream's playback path while

- 14 -

preserving the technical requirement of seamless playback." Doc. 1 at 5. The '898 Patent allegedly achieves this advancement "[b]y identifying decision points in a predefined path and inserting user-selected segments at those points" which "avoid[s] the buffering delays, playback stoppages, and context switching that characterized prior systems." *Id.* The predetermined content path disclosed allegedly "enables instantaneous transitions through sophisticated pre-buffering and content delivery mechanisms." *Id.* at 4.

These alleged advances do not provide an inventive concept. First, the '898 Patent admits pre-buffering was known in the prior art. *See* '898 Patent col. 3 l. 54–col. 4 l.15 ("To avoid interruptions in the video stream, intelligent buffering and progressive downloading of the video, audio, and/or other media content can be performed as described in U.S. patent application Ser. No. 13/437,164 . . . entitled 'Systems and Methods for Loading More Than One Video Content at a Time.'"). Considering that "incorporation by reference does not convert the invention of the incorporated patent into the invention of the host patent," *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1553 (Fed. Cir. 1996), it follows that an incorporated patent cannot provide the inventive step to satisfy step two of *Alice*.

Additionally, and independently, the "sophisticated pre-buffering and content delivery mechanism" plaintiff mentions are only discussed in the written description, not the claims, and thus cannot provide the inventive concept. *See GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1061 (Fed. Cir. 2026) ("[O]nly features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter—here, something beyond an abstract idea and sufficient to render the claim eligible."). The specification admits pre-buffering was known in the art, and the claims are directed to organizing and displaying a video playlist without mention of buffering delays or playback stoppages. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) ("[W]e do not read *Aatrix* to say that

- 15 -

any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss . . . .”). In its argument, plaintiff fails to point to any language in the ’898 Patent that provides an inventive concept, citing only the complaint. *See* Doc. 14 at 19–20. Thus, plaintiff’s “conclusory assertion about an inventive concept . . . is insufficient.” *GoTV Streaming*, 166 F.4th at 1068.

Plaintiff does not rebut defendant’s argument that “the dependent claims likewise consist only of variations of the abstract idea.” Doc. 12 at 15; *see* Doc. 14 at 19–20. Accordingly, the ’898 Patent is invalid for claiming ineligible subject matter under 35 U.S.C. § 101.

### C.  The ’306 Patent claims an abstract idea.

Defendant argues that the “claims of the ’306 Patent are ineligible because they are directed to the abstract idea of a webpage for a product that shows a video reflecting user-selected product options.” Doc. 12 at 5. The court agrees.

Claim 1 discloses a method of “presenting an interactive video” to a shopper through a webpage designed to promote a product. ’306 Patent col. 18 ll. 53–55. The claimed method incorporates an application layer that includes user interface (UI) elements and a video player layer. *Id.* col. 18 l. 55–col. 19 l. 25. “[E]ach UI element corresponds to a different configurable feature of the product” such as size or color. *Id.* col. 18 ll. 58–59. The shopper interacts with a UI element by customizing a feature of the product, e.g., selecting a certain product size. *Id.* ll. 64–67. Then, the application layer sends a “first message” to the video player layer, which causes the interactive video to display the product with the selected feature, e.g., the shopper’s selected size. *Id.* col. 19 ll. 1–8. As the shopper views the video with the customized size, the shopper interacts with a second UI element to customize another product feature, e.g., product color. *Id.* ll. 9–15. The application layer then sends a “second message” to the video player layer to cause the interactive video to display the

product with both customized features, e.g., the shopper's selected size and color. *Id.* ll. 16–25.

Thus, claim 1 covers the abstract idea of displaying a product with the shopper's selected features. In a brick-and-mortar store, a shopper would ask the salesperson for a particular size and color of a dress, suit, car, shoes, or any other product. By accomplishing the salesperson's task through a computer-automated process, the '306 Patent claims the abstract idea of displaying a customized product to a shopper. *See Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("This is a quintessential 'do it on a computer' patent: it acknowledges that data . . . was previously collected . . . manually, and it simply proposes doing so with a computer. We have held such claims are directed to abstract ideas.").

Plaintiff contests this finding by arguing that the '306 Patent solves the "Internet-specific problem" of "'a disconnect between the content on a webpage and user interactions with the interactive video' . . . by the technological solution of a message-passing architecture between application layer and video player layer." Doc. 14 at 23 (quoting '306 Patent col. 12 l. 67–col. 13 l. 2). The specification, however, does not comprehensively describe this supposed technological solution. To be sure, claim 1 does not explain how the "messages" disclosed in the written description improve upon the prior art. *See* '306 Patent col. 18 l. 53–col. 19 l. 25. The specification merely demonstrates that the application layer and the video player layer "are configured to communicate via a two-way communication protocol. For example, [each] layer[] . . . may communicate using an application program interface (API). In some examples, the API includes a JavaScript library based on the 'postMessage' iFrame framework." *Id.* col. 14 ll. 54–58.

Despite this vacuity of technical description, plaintiff argues "that the messages are more than just any 'prior-art JavaScript postMessage' . . . but instead are specially formatted messages." Doc. 14 at 22. Further, plaintiff argues that the application and video player layer are distinguished from the prior art because

- 17 -

each comprise software capable of sending and receiving, respectively, these specially formatted messages. *Id.* However, "all the terms refer simply to packages of information of a particular content, and hence do not escape the abstract-idea category." *GoTV Streaming*, 166 F.4th at 1066.

Plaintiff alleges that practicing the '306 Patent "result[s] i[n] a fully synchronized, dynamically responsive product presentation experience in which the video and the surrounding webpage behave as a unified, coherent system rather than as independent components." Doc. 14 at 21. However, "improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). Plaintiff's argument that the '306 Patent provides a technological solution falls short. "[T]o be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself." *Id.* at 1365. The claims here are directed to displaying a product video with shopper-customized features, not to enhancing computer function.

Accordingly, the court finds that the claims of the '306 Patent are directed to the patent-ineligible abstract idea of showing a video on a webpage for a product, where the video is updated to show the product options that a user selects.

### D. The '306 Patent fails to provide an inventive concept.

Defendant argues that the claims of the '306 Patent "use conventional technology and thus lack an inventive concept." Doc. 12 at 5. The court agrees.

Like the '898 Patent, the '306 Patent makes clear that the claimed method "can be implemented in any suitable hardware or software," on "any suitable network," and "in any suitable programming language or framework." '306 Patent col. 4 ll. 31–64. Thus, the court finds that the '306 Patent claims "nothing significantly more than an instruction to apply the abstract idea of"

showing a video on a webpage for a product, where the video is updated to show the product options that a user selects, "using some unspecified, generic computer." *See Alice*, 573 U.S. at 225–26.

Plaintiff admits that the application layer, video player layer, and messages "build on prior art concepts," but argues that those claim elements "are configured in a way that was not conventional in the prior art." Doc. 14 at 23. Plaintiff concludes that "[b]ecause the complaint and patent sufficiently raise allegations that this structure is not routine and conventional," the '306 Patent should survive *Alice* step two. *Id.* at 24.

Despite alleging that the '306 Patent provides an inventive concept "by using the novel message-passing structure of the claims," plaintiff only cites portions of the specification that discuss using application program interface (API) communication protocols. *Id.* at 23–24 (citing '306 Patent col. 14 ll. 50–65, col. 15 ll. 11–49). It is settled that "communication of information by . . . APIs [is] well-known in the prior art." *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1377 (Fed. Cir. 2021) (cleaned up).

As the claims fail to do significantly more than simply describe the abstract method, plaintiff's arguments alone cannot generate an otherwise absent inventive concept. *Mayo*, 566 U.S. at 77–79; *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters properly subject to judicial notice . . . such as the claims and the patent specification." (cleaned up)); *see also Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("The mere fact that the inventor applied coined labels to conventional structures does not make the underlying concept inventive.").

Also, plaintiff does not rebut defendant's argument that "the dependent claims add nothing beyond variations of the same abstract idea." Doc. 12 at 17; *see* Doc. 14 at 20–24. Accordingly, the '306 Patent is invalid for claiming ineligible subject matter under 35 U.S.C. § 101.

## V. Conclusion

Defendant also argued that plaintiff's complaint failed to plausibly plead direct or indirect infringement. Doc. 12 at 5–6. However, considering both the '898 and '306 Patents are invalid under 35 U.S.C. § 101, the court does not reach those arguments.

Thus, defendant's motion to dismiss under Rule 12(b)(6) is granted. Given that the court's holding of invalidity is based on the asserted patents' claims and specifications, amendment would be futile. A patent, unlike a complaint, cannot be amended by re-pleading. The court will not consider allegations that contradict the claims or the specification of the asserted patents. *See Secured Mail Sols.*, 873 F.3d at 913. Plaintiff's case is dismissed with prejudice. Any pending motions are denied as moot.

*So ordered by the court on May 26, 2026.*

J. CAMPBELL BARKER
United States District Judge

- 20 -